CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 19 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDY G. FLINT,<br>*Plaintiff,*<br><br>v.<br><br>ACTION PERSONNEL, INC., and<br>ELIZABETH ARDEN, INC.,<br>*Defendants.* | Civil Action No. 7:13-CV-00406<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Sandy G. Flint ("Plaintiff" or "Flint") filed a *pro se* complaint in this action naming both Action Personnel, Inc. ("Action") and Elizabeth Arden, Inc. ("Elizabeth Arden") as Defendants. In her civil cover sheet where it directs the filer to list the cause of action, she states that she is asserting claims under "Title VII The Genetic Information Nondiscrimination Act" and also states that she is asserting a retaliation claim for complaining about harassment. ECF No. 3-2 at 1. Based on the civil cover sheet and the allegations in her complaint, the Court construes her Complaint as asserting claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), as well as a claim under the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff-1 ("GINA").

Both Defendants filed motions to dismiss, which are pending before the Court and addressed herein. For the reason set forth herein, Action's motion to dismiss, ECF No. 18, is **GRANTED**, and Elizabeth Arden's Motion to Dismiss, ECF No. 13, is **GRANTED IN PART** and **DENIED IN PART**.

I. **Procedural Background**

Before addressing the merits of the motions pending before the Court, the Court turns briefly to the procedural background of this case. Specifically, after each Defendant filed its

1

motion to dismiss, Plaintiff was given the proper Roseboro[1] notice explaining that she needed to respond to the motion. She was further warned that if she did not "file some response within the twenty-one (21) day period, the Court may dismiss the case for failure to prosecute." ECF No. 16. The 21-day period for responding to the Elizabeth Arden motion would have expired on October 30, 2013. On October 29, 2013, Flint filed a motion for extension of time to file a response to the motion to dismiss. ECF No. 21. The Court granted the extension, giving her until November 29, 2013 to file her response. ECF No. 22. The Court again informed her that if she did not file some response on or before that date, it might dismiss the case for failure to prosecute. Id.

Although it was not docketed until after the December 16, 2013 hearing, the Court received a letter from Flint on or about November 25, 2013, before the November 29, 2013 deadline. In that letter, which the Clerk has docketed as a motion for extension of time, Flint stated that she did not want to have her case closed, but wanted to "continue forward based upon [her] complaint." She stated that she has "not lost interest and [is] working hard to prepare [her]self for a hearing in front of you" and that such a hearing "would also give [her] the chance to explain [her] case directly to you and the defendant." ECF No. 24.[2] In response, the Court scheduled a conference for December 16, 2013, which was held and at which Flint appeared.

As is evident from the foregoing, although Ms. Flint has not filed a written response to either motion, she has repeatedly (and in compliance with the deadlines set forth by the Court, at least as to Elizabeth Arden's motion to dismiss), reiterated her interest in responding to the motions to dismiss. Additionally, at the hearing held before the Court on December 16, 2013, she articulated her opposition to the motions and has continued to prosecute her case in that sense.

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[2] To the extent that motion requests an extension, it is denied as moot in light of the Court's rulings herein.

Thus, the Court will not dismiss the action for failure to prosecute, but will instead address the motions to dismiss on their merits.

## II. Action Personnel, Inc.'s Motion to Dismiss

Action seeks dismissal as to all claims asserted against it on the grounds that both Title VII and GINA require that Flint exhaust her administrative remedies prior to filing suit in federal court. As Action properly notes, plaintiffs are required to exhaust administrative remedies, by filing a timely charge of discrimination with the EEOC, before bringing suit in federal court. See 42 U.S.C. § 2000e5(f)(1); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Exhaustion serves the dual "purposes of notice and conciliation." Chako v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005). Indeed, exhaustion "gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions" as well as "initiat[ing] agency-monitored settlement, the primary way that claims of discrimination are resolved." Id. Thus, in order to assert claims against Action in this case, Flint was required to name it as a respondent in her EEOC charge. See Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998); see also Hill v. Augusta Cnty. School Bd., 2009 WL 1065515, at *2 n.3 (W.D. Va. April 17, 2009) (citing Causey for the proposition that "plaintiffs alleging discrimination may sue only the parties named in their underlying EEOC charge"); Westbrook v. North Carolina A & T State Univ., 2013 WL 3766083, at *3 (M.D.N.C. 2013) (plaintiff failed to exhaust administrative remedies against individual defendants because they were not named in the charge as respondents).

In determining whether claims have been properly exhausted the Court looks to the contents of the EEOC charge. Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 237 (4th Cir. 2000)) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."). Specifically, "the scope

3

of the civil action is confined ... by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Id. (quoting Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981)).

In this case, Flint attached to her Complaint a copy of her right-to-sue notice from the EEOC, and her Complaint appears to have been timely filed within the period allowed.[3] See ECF No. 3-1. The right-to-sue notice reflects that Susan North, counsel for Elizabeth Arden, was also sent a copy. The charge of discrimination, however, has not been filed by any party. Action states that it was not named in the charge, however, and Plaintiff admitted at the hearing that the charge did not identify Action as her employer.[4] Thus, Flint failed to properly exhaust her administrative remedies against Action and this Court does not have jurisdiction over her claims against Action. Action's motion to dismiss, ECF No. 18, is therefore **GRANTED** and all claims against Action Personnel, Inc. are hereby **DISMISSED**.

### III. Elizabeth Arden's Motion to Dismiss

Elizabeth Arden seeks dismissal on four different grounds. The Court addresses first the argument that Flint has failed to exhaust her administrative remedies under the Genetic

---

[3] The Notice of Rights stated that it was mailed on May 30, 2013 and informs Plaintiff she must file her lawsuit within ninety days of her receipt of this notice. Plaintiff's Complaint was filed on August 30, 2013, 92 days after the notice was mailed, but presumably within 90 days of when Plaintiff received it. Neither defendant argues that the suit is not timely.

[4] Although Plaintiff stated at the hearing before the Court that an EEOC representative completed the charge of discrimination for her before she signed it, and that it was the EEOC's decision to name only Elizabeth Arden in the charge, that fact is of no moment. Although a copy has not been produced, she presumably signed the charge as required, does not allege that she ever sought to amend it, and may not avoid the failure to name Action by shifting blame to the EEOC. See, e.g., Sloop v. Mem. Mission Hosp., Inc., 198 F.3d 147 (4th Cir. 1999) (where plaintiff failed to check the retaliation box on her charge and later sent a letter to the EEOC asking how she could add a retaliation claim, but took no further action to do so, she had failed to exhaust her administrative remedies with regard to that claim); see also Tillbery v. Kent Island Yacht Club, Inc., 461 F. App'x 288 (4th Cir. 2012) (unpublished) (where plaintiff's intake questionnaire contained clerical error in date—using 2006 instead of 2008-2009—and that date was left unchanged in the formal charge, plaintiff failed to exhaust her 2008-2009 harassment claim); Watkins v. Milliken & Co., 613 F. Supp. 408, 417-418 (W.D. N.C. 1984) (discussing authority holding that EEOC is not responsible for error or omissions on charge signed by plaintiff, even where EEOC prepared the form).

Information Non-Discrimination Act ("GINA") and then turns to the remaining arguments, all of which are premised on Rule 12(b)(6).

### A.  Failure to Exhaust Claim under GINA

Elizabeth Arden correctly notes that GINA,[5] like Title VII, requires that a plaintiff exhaust her administrative remedies prior to bringing suit in federal court. See 42 U.S.C. § 2000ff-6. Again, the Court is at a disadvantage because no party has provided a copy of the EEOC charge. Elizabeth Arden, however, represents that the charge Flint filed with the EEOC does not reference any alleged GINA violations, and Flint has not disputed that fact nor does her Complaint indicate that her charge referenced GINA at all. Thus, it appears that any claim that Elizabeth Arden violated GINA must be dismissed because Flint failed to exhaust her administrative remedies as to that claim. Elizabeth Arden's motion to dismiss is therefore GRANTED as to Plaintiff's GINA claim.

### B.  Dismissal Under Rule 12(b)(6)

Elizabeth Arden's remaining three grounds for relief are premised on Rule 12(b)(6). See Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests "the sufficiency of a complaint," and to survive such a motion, the complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted). The Court construes the Complaint liberally because Plaintiff is pro se, id. at 94, and also accepts her factual allegations as true for purposes of ruling on the motion. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). So construed, the facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 555, 570. A

---

[5] GINA prohibits employers from "failing or refusing to hire, or . . . discharg[ing], any employee, or otherwise . . . discriminat[ing] against any employee . . . because of genetic information with respect to the employee." Poore v. Peterbilt of Bristol, L.L.C., 852 F. Supp. 2d 727, 730 (W.D. Va. 2012).

plaintiff's "obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions . . . ." Id. at 555 (internal alterations and quotations omitted). Thus, neither "a formulaic recitation of the elements of a cause of action," id., nor "naked assertions devoid of further factual enhancements" will suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal alterations and quotation marks omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### 1. Theory of Employer Liability

Elizabeth Arden argues that the Complaint fails to state a claim because Flint has failed to allege that Elizabeth Arden is "legally responsible for or liable for the actions and conduct stated in the Complaint." ECF No. 14 at 3. Specifically, although Flint alleges some facts concerning who her employer was, Elizabeth Arden posits that she has "fail[ed] to allege any proper legal theory, such as respondeat superior or joint employment," to show that Elizabeth Arden can be held liable under Title VII. The Court disagrees.

Although Flint has not set forth any "legal theory" for imposing liability, she is not required to assert legal theories in her Complaint, but is simply required to allege facts sufficient to state a plausible claim against Elizabeth Arden. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (a Rule 12(b)(6) motion should be granted only if "it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged") (citation omitted) (emphasis in Edwards). The Court concludes she has met that burden.

The Complaint states that "[o]n Nov. 25, 2011 the plaintiff was hired by Barry Brady of Elizabeth Arden, Inc. . . . and was told to go to Action Personnel, Inc. . . . to have a badge made in which to be paid through" ECF No. 3 at 1. Flint also states that she started working at

Elizabeth Arden on November 28, 2011 as "supervisor of packing and rework lines" and that she had done "this exact job for the previous 4 years at Lawrence Transportation."[6] ECF No. 3 at 1. Throughout her Complaint, she describes interactions with Elizabeth Arden supervisors and that she reported directly to Elizabeth Arden supervisors. She alleges facts suggesting that they controlled her work environment, including assigning her duties, determining which employees would work on her shift and which shift she would work, approving requests for medical leave, and requiring her to return early from medical leave. These facts are sufficient to at least state a plausible claim that Elizabeth Arden was her employer.[7] See, e.g., Magnuson v. Peak Tech. Servs., 808 F. Supp. 500, 507-509 (E.D. Va. 1992) (explaining that a Title VII plaintiff may have more than one employer and noting that an employer is one who: (1) meets the Title VII statutory definition of "employer," including, for example, having a sufficient number of employees; and (2) exercises "substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment.").

### 2. Sexual Harassment Claim

In its third ground for dismissal, Elizabeth Arden claims that the Complaint fails to state a claim for sexual harassment. A plaintiff in a hostile work environment claim must prove that a reasonable jury could find the harassment: (1) unwelcome; (2) based on her gender; (3) "sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive work environment;" and (4) that there is some basis for imputing liability to plaintiff's

---

[6] At the hearing before the Court, Plaintiff elaborated that she had worked for Lawrence Transportation for approximately twenty-two years, the last four of which had been performing work only for Elizabeth Arden pursuant to a contract between Elizabeth Arden and Lawrence. When Lawrence lost that contract, her Lawrence supervisor, who the Court believes she said was Barry Brady, was hired by Elizabeth Arden and then hired her, but only through an employment placement agency, Action Personnel, Inc.

[7] Additionally, Flint stated at the hearing that it was Elizabeth Arden who had set her rate of pay and then informed Action Personnel what her hourly rate would be.

7

employer. Mosby–Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (quoting EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009)).

In her Complaint, Flint alleges that the sexual harassment against her began around March 5, 2012, when she returned to work after being out for a six-week medical leave. The alleged harassment was carried out by a new forklift driver, called "DC (Dorrell Washington)," who had been hired while she was out. She explains:

> At first [DC] would just flirt heavily and ask the plaintiff out on dates. As she would not accept his advances he began telling lies about her, go back and forth between trying to be nice then hateful. This is also when he began to make sexual remarks to her, tell her "tits looked good" her "ass looked nice." . . . DC also made it a point to stare, stand over, and be up against the plaintiff as much as possible all day.

ECF No. 3 at 2. Her Complaint also makes references to other specific comments, including a May 1, 2012 argument she had with DC in which DC asked Flint how "would she like it if he called her a bitch." Id. at 3.

She further avers that, after DC made that comment, she went to her manager, Travis Lane, to complain. After he would not listen and told her he did not want to hear another word about the situation, she went to the counter-part supervisor, Todd Altice, and reported the sexual harassment and mistreatment from DC. Altice spoke to Chris Means, who was DC's supervisor. Thirty minutes later, Means told plaintiff that DC denied the conduct and since no supervisor had heard it, nothing could be done. Id. at 3. Flint alleges she asked that DC be moved from her area and he was moved for only two days and then returned to work in her area again.

The Complaint also alleges that the harassing conduct continued even after her report to Elizabeth Arden supervisors. After the two day-break, for example, she alleges that DC "taunted the plaintiff with this [i.e., being returned to her shift] and began the harassment again."

8

Moreover, according to the Complaint,

> [o]n May 22, 2012, DC had beg[u]n to get off his forklift daily to stand beside or over top of the plaintiff while helping to do a rework. On this day he made a nasty remark about 2 gay women who were working and ask[ed] the plaintiff "why would you want to fuck with what you bleed from" and ask[ed] the plaintiff if she did this also. The plaintiff did not reply.

Id. at 4.

The following day, May 23, 2012, "DC set up right beside [Flint], as usual" and conveyed that he had worked it out with Means to stay on the day shift with her. "He also added that Means had made the comment to him, 'Are you sure you wanna work with her' as if something were [Flint's] fault." Plaintiff began to cry and spoke again to Lane, her supervisor, telling her she could not work like this, but he instructed her to go home and said he would call her. That evening he called to say he would not bring her back and did not want to see her crying every day.

As a result, she believed she had been fired and did not return to Elizabeth Arden. She alleges that afterward, Tammy St. Clair of Action Personnel "would not use [Plaintiff] for any other work" and that she "has not been contacted by Tammy St. Clair" since her last day at Elizabeth Arden. Based on the allegations of the Complaint, construed in the light most favorable to Plaintiff, the Court concludes that Plaintiff has at least stated a plausible claim of sexual harassment. Those facts, as set forth above, support each element of such a claim.

Plaintiff has sufficiently alleged facts that support the first two elements–that the conduct by DC was unwelcome and based on sex. As to whether the conduct alleged is sufficiently severe or pervasive, the Complaint describes a period of almost three months during which Plaintiff alleges she was subjected repeatedly to inappropriate comments and sexual advances and remarks, as well as repeated episodes where DC would "stand over" or "be up against the plaintiff" "as much as possible all day." ECF No. 3 at 2. Although it is not entirely clear, it is at

9

least plausible that these incidents involved physical contact. Moreover, it was sufficiently upsetting to her that she was repeatedly crying at work. Thus, she has stated facts that could plausibly support the third element.

Finally, the Court also finds that she has sufficiently pled facts that could plausibly allow imputing liability to Elizabeth Arden. Nowhere does Plaintiff allege that DC was her supervisor; instead, it appears that she may have been his supervisor, or they were co-workers. See generally ECF No. 3. "An employer is liable for harassment by the victim's coworkers only if it knew or should have known about the harassment and failed to take effective action to stop it." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008) (citations and internal quotation marks omitted); see also EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 178 (4th Cir. 2009) (where employee reported harassment to supervisors, there was sufficient evidence employer knew of harassment, and where only some limited steps were taken and they were ineffective, a rational juror could find that the employer "failed to take additional action . . . .reasonably calculated to end the harassment") (citing Sunbelt Rentals, 521 F.3d at 321). In her Complaint, Plaintiff alleges that she complained to her supervisors about the alleged harassment by DC and that they transferred him for a short time (two days), but then returned him to her shift and that, thereafter, the harassment did not stop. These facts state a plausible basis for imputing liability to Elizabeth Arden. For all these reasons, Elizabeth Arden's motion to dismiss Plaintiff's sexual harassment claim is DENIED.

### 3. Retaliation

Finally, Elizabeth Arden contends that Flint has failed to allege sufficient facts to plead a retaliation claim. To establish a *prima facie* retaliation claim under Title VII, Flint must show that (1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) a sufficient causal connection exists between the protected activity and the

10

adverse employment action. Lettieri v. Equant, Inc., 478 F.3d 640, 649-50 & n. 2 (4th Cir. 2007); Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003). In a recent decision, the Supreme Court held that a Title VII retaliation claim requires that the complaint be the but-for cause of the retaliatory action. Univ. of Tx. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). That is, a Title VII retaliation plaintiff must establish that "her protected activity was a but-for cause of the alleged adverse action by the employer," and not merely a "motivating factor." See id. Having reviewed the allegations in the Complaint, the Court concludes that Plaintiff has stated a plausible claim of retaliation. Specifically, she alleges that she twice complained to her Elizabeth Arden supervisors about the harassment, both times crying, that she was fired from Elizabeth Arden the day of her second complaint, and that her supervisor told her that the reason was he could not put up with her crying. These allegations are sufficient to allow that claim to proceed, as well. Thus, Elizabeth Arden's motion to dismiss is DENIED as to her retaliation claim.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Action Personnel's Motion to Dismiss, ECF No. 18, and **GRANTS IN PART** and **DENIES IN PART** Defendant Elizabeth Arden, Inc.'s Motion to Dismiss, ECF No. 13. An appropriate order shall enter.

Because Plaintiff is proceeding pro se and it appears she will continue to be pro se, the Court offers some additional instructions to her to aid in the smooth continuation of her lawsuit. First, although the Court allowed Plaintiff to explain her reasons for opposing the motions to dismiss at the hearing the Court held, in the future all communications with the Court should be **in writing** and copies should be provided to counsel for Elizabeth Arden. Any request for any type of relief from the Court should contain a brief title indicating that it is a motion and expressly state the relief sought from the Court. Plaintiff is further advised to obtain a copy of the

local rules of this Court, if she does not already have them, to learn the deadlines for filing responses to motions and to learn other important rules that will govern this case. Although she is proceeding pro se, she will nonetheless be expected to comply with those rules.

Finally, Plaintiff and counsel for Elizabeth Arden are hereby directed to consult with each other and to discuss scheduling matters in this case. They are further directed to file, not later than sixty days after entry of this Order, a joint proposed scheduling order with deadlines for discovery, pre-trial motions, and pre-trial deadlines.

**ENTER**: This ___ day of December 2013.

_____
Senior United States District Judge