CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 13 2015

JULIA C. DUDLEY, CLERK
BY: /s/ JMC
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SANDY G. FLINT,<br>Plaintiff, | Civil Action No. 7:13-CV-00406 |
| v. | **MEMORANDUM OPINION** |
| ACTION PERSONNEL, INC. and<br>ELIZABETH ARDEN, INC.,<br>Defendants. | By: Glen E. Conrad<br>Chief United States District Judge |

Elizabeth Arden had previously filed a motion for summary judgment, and plaintiff did not timely respond. On October 31, 2014—nearly one month after plaintiff's response was due—the court granted Elizabeth Arden's motion for summary judgment, and directed that the case be closed. Dkt. Nos. 40, 41. On November 4, 2014 (and apparently before plaintiff received the court's opinion and order via mail), plaintiff requested additional time to "properly reply" to the summary judgment motion. Dkt. No. 42. In response, the court entered an order allowing plaintiff to file any written "evidence, statements, testimony, or argument that she believes the court needs to properly consider her case." Dkt. No. 43.

Plaintiff has now filed her written response, Dkt. No. 44, and Elizabeth Arden has filed its reply. Dkt. No. 45. To the extent plaintiff's filing is a motion for reconsideration, it is DENIED. For the reasons discussed herein, the court concludes that summary judgment in Elizabeth Arden's favor remains proper. Thus, it declines to vacate its prior opinion and order granting summary judgment and reaffirms judgment in favor of Elizabeth Arden.

### Background

The court's prior opinion sets forth the factual and procedural background of the case. See Dkt. No. 40 at 2-10. The court will not restate most of that background herein and assumes

the reader's familiarity with it. Instead, this opinion will summarize briefly the court's prior ruling and then focus primarily on the factual allegations and arguments raised in the two new filings. See Dkt. Nos. 44, 45.

In its prior opinion, the court addressed Flint's two claims: (1) a claim of hostile work environment based on the alleged sexual harassment of a co-worker, Dorrell Washington; and (2) a claim that Elizabeth Arden retaliated against her when it terminated her placement, which led to her subsequent termination from Action Personnel ("Action").[1] As to the first, the court granted summary judgment in favor of Elizabeth Arden on the grounds that the harassment was not sufficiently severe or pervasive to constitute a hostile work environment. As to the retaliation claim, the court concluded that the record contained "insufficient evidence from which a reasonable jury could conclude that the but-for cause of Flint's termination was retaliation for her complaints of harassment by Washington . . . The undisputed facts in this case show that Lane, who alone made the decision to terminate her assignment, made that decision based on her repeated confrontations and attitude toward her immediate supervisor and others." Dkt. No. 40 at 17.

## Analysis

**Characterization and Treatment of Plaintiff's Filing**

As noted, Flint did not timely respond to the summary judgment motion, but has now filed a document containing arguments as to why summary judgment is improper. Flint's filing consists of eleven pages of argument and purported facts, mostly directed toward refuting the

---

[1] At the urging of Elizabeth Arden's warehouse manager, Flint applied to be a temporary worker through Action so that she could then be placed at Elizabeth Arden's warehouse. She was hired by Action, paid by Action, and subject to its policies (which also stated she was to abide by Elizabeth Arden's policies), but the only Action client she worked for was Elizabeth Arden. When Elizabeth Arden told Action it no longer wanted Flint to work there, she was terminated by Action. Action was previously dismissed from the case because it was not named in Flint's EEOC charge. Dkt. No. 27. Elizabeth Arden's summary judgment motion does not challenge that it is Flint's employer for purposes of Title VII. See Dkt. No. 40 at 3-4, 13 n.10 (explaining this background in more detail).

2

facts set forth in the court's prior opinion. See Dkt. No. 44 at 10. The eleven-page document is signed by Flint, but not verified or otherwise sworn. Flint has also filed three attachments that are typed statements of purported witnesses, but are all unsigned and unsworn.

In its response, Elizabeth Arden argues that Flint's filing should be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59, and contends that plaintiff has failed to establish her entitlement to relief under that rule. The court agrees that Flint has not stated grounds for relief under Rule 59(e) and thus will deny her motion for reconsideration. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (grounds for relief under Rule 59(e) are: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice"). Inasmuch as the court concludes that summary judgment in Elizabeth Arden's favor is proper even if Flint's filing is considered a summary judgment response, however, the court will also analyze the summary judgment motion anew in light of any new evidence contained in her filing.

The court's next inquiry is whether the filing contains any competent summary judgment evidence that the court may consider. The three statements by purported witnesses are neither signed nor sworn, and thus cannot be considered by the court on summary judgment. Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence).

The fact that plaintiff is proceeding pro se does not excuse her failure to follow the rules of court or the requirements governing competent summary judgment evidence. See McNeil v. United States, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in

3

ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); Hansan v. Fairfax Cnty. School Bd., 405 F. App'x 793, 794 (4th Cir. Dec. 21, 2010) (unpublished) (pro se status alone does not excuse a failure to comply with the court's orders or procedural rules); see also Dkt. No. 26 at 11-12 (prior order in this case advising plaintiff that despite her pro se status, she would be expected to comply with the rules of the court). Moreover, the Roseboro[2] notice served on plaintiff expressly advised her as to what her summary judgment response must contain, including that she "must set forth [her] version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate for each that it is signed under penalty of perjury) . . . ." Dt. No. 39 at 1-2. Because the three attached statements fail to comply with these requirements, the court cannot consider them. See White, 366 F.3d at 300; Orsi, 999 F.2d at 92.

Flint's eleven-page document differs from the other statements in that it is signed by her, but like those statements, it is not sworn or made under penalty of perjury. For the same reasons set forth above, then, the court could decline to consider the document. Because Flint has signed it—and presumably would swear to its contents—the court will instead consider it and treat certain of the factual allegations as supporting her summary judgment opposition. These include only those facts that are both based on her personal knowledge and that do not conflict with her deposition testimony. See Fed. R. Civ. P. 56(e) (requiring summary judgment affidavits or declarations to be made on personal knowledge and set out facts that would be admissible in evidence); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (party does not create a genuine issue of material fact by submitting an affidavit that conflicts with her deposition

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

4

testimony).³ Even considering these additional allegations, the court nonetheless concludes that Elizabeth Arden is entitled to summary judgment, as explained below.

**Hostile Work Environment Claim**

Flint's statement contains some additional factual information about the severity of the alleged harassment, including that Washington once said "her tits looked good" and that much of the claimed harassment occurred a number of times each day and for longer than a period of one month. Dkt. No. 44 at 4-5. In light of the recent decision by the United States Court of Appeals for the Fourth Circuit in Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202 (4th Cir. 2014),⁴ it is perhaps arguable that Flint has now alleged sufficient facts to satisfy the "severe or pervasive" element of her case. See id. at 208-09 (concluding, in case involving no physical touching, that "comments of varying degrees of offensiveness" made by a co-worker "several times a week for well over a year" could constitute actionable harassment). On the other hand, Flint alleged only one comment of a sexual nature that was not previously before the court. Her latest filing also suggests her primary complaint is less about the sexual comments and more that Washington was "mean" to her and criticized her work or made her work difficult whenever she would turn him down for dates. Dkt. No. 44 at 5 ("The point Flint is making is not mainly sexual, although Washington made it that way with his actions and comments. The real point was the constant harassment and misconduct that followed if Flint would not respond to Washington. This is what was unbearable to Flint [and] interfered with her ability to do her job."). There are a number of

---

³ Much of the signed statement submitted by Flint simply states what the evidence could or would show and what she could establish through other witnesses. It also contains a number of factual allegations that are unrelated to the elements of her claim or the reasons the court granted summary judgment. For example, she offers facts to support her assertion that she was a supervisor and others believed her to be a supervisor, facts refuting how many times she cried at work and what caused her to cry, and facts concerning Lane's criticisms of Altice. She also alleges she was not called "at home" and told of her termination, but on her cell phone. Even accepting that these facts are disputed, they do not preclude summary judgment because they are not material. See Fed. R. Civ. P. 56(a).

⁴ Walker was decided after this court's ruling on Elizabeth Arden's summary judgment motion.

5

other factors, too, that suggest the harassment would not satisfy the "severe or pervasive" requirement, including the fact that Washington was a co-worker and that this same conduct Flint did not consider harassment initially. See Dkt. No. 40 at 13-16 (considering various relevant factors).

Even assuming her additional allegations could satisfy the "severe and pervasive" element, Elizabeth Arden is nonetheless entitled to summary judgment on the grounds that plaintiff cannot establish the fourth element of her claim, i.e., that there is some basis for imputing liability to the employer.[5] Where the alleged harasser is the plaintiff's co-worker, as is the case here, then the harassment is imputable to the employer only if the employer "was negligent in controlling working conditions." Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). A plaintiff shows such negligence by establishing that the employer knew or should have known about the harassment and failed to take effective action to stop it. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 334 (4th Cir. 2003); see also Mikels v. City of Durham, 183 F.3d 323, 332 (4th Cir. 1999) ("[E]mployers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop [the harassment]."). "Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011) (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008)).[6]

---

[5] In its prior opinion on summary judgment, the court did not address the arguments of Elizabeth Arden concerning this element because it concluded summary judgment was appropriate due to a lack of evidence on the "severe and pervasive" element of plaintiff's prima facie case. In light of the additional allegations by Flint and the possibility that they might render the alleged harassment sufficiently severe or pervasive to survive summary judgment, the court address the arguments concerning the fourth element.

[6] Although Elizabeth Arden refers in its summary judgment memorandum to the affirmative defense outlined in Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), see Dkt. No. 38 at 20-22, and although the court referenced that defense briefly in its prior opinion, that defense is inapplicable in cases of co-worker harassment, as opposed to supervisor harassment. Vance, 133 S. Ct. at 2439; Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006). Instead, in cases of co-worker harassment, the plaintiff

6

In this case, just as in Xerxes Corp., "it is undisputed that [the defendant's] anti-harassment policies provide[d] reasonable procedures for victims to register complaints...." See Xerxes Corp., 629 F.3d at 669 (citations omitted). That is, plaintiff does not dispute that both Action and Elizabeth Arden had sexual harassment policies and disseminated them. Flint's managers were trained on them, Flint was aware of the policies, Flint knew she could report harassment to her supervisors, and Flint knew that per Action's policy, she could go to her employer and complain. Dkt. No. 38-1, Flint Dep. at 38-40; Dkt. No. 38 at 6, ¶¶ 14-15 (citing parts of record concerning Elizabeth Arden's anti-harassment policy and training of supervisors on same). Flint also testified that she knew Kathy, a Human Resources employee of Action, was on-site at Elizabeth Arden, and that she could report any harassment to her. Flint Dep. at 38-40.[7]

Having found that there were policies in place and avenues for Flint to make a complaint of harassment, the court "need only inquire as to whether [plaintiff] presented sufficient evidence to demonstrate that [defendant's] responses to the complaints made under its policies were not reasonably calculated to end the harassment and, therefore, that liability for the harassment may be imputed to it." See Xerxes Corp., 629 F.3d at 669 (internal citations and quotations omitted). In evaluating whether a reasonable jury could conclude that Elizabeth Arden's response was not reasonably calculated to end the harassment, it is important to note that there is no "exhaustive list" or "particular combination" of remedial measures or steps that

---

bears the burden of establishing the basis for imputing liability to the employer based on the negligence standard discussed herein. See Vance, 133 S. Ct. at 2439.

[7] Flint argues in her summary judgment response that she considered herself an Elizabeth Arden employee and believed her supervisors were Elizabeth Arden employees. See Dkt. No. 44 at 3. She further contends that it was therefore Elizabeth Arden's responsibility to make any report to Action. Id. Her arguments on this point are not consistent with the documents in this case, including the policy containing her signature. But even if she had been solely an Elizabeth Arden employee, the undisputed facts show that Flint never reported the bulk of the alleged harassment, and certainly not the most egregious comment she has now identified, to any supervisor at Elizabeth Arden.

7

an employer need employ. Id. Indeed, even a remedial action that "proves to be ineffective in stopping the harassment may nevertheless be found reasonably calculated to prevent future harassment and therefore adequate . . . as a matter of law." Id. (citation omitted).

In a case where the remedial action does not result in a cessation of harassment,

> [courts] consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. . . . By way of example, responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination.
>
> The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective. Repeat conduct may show the unreasonableness of prior responses. On the other hand, an employer is not liable, although [harassment] persists, so long as each response was reasonable. It follows that an employer is not required to terminate a [particular] perpetrator except where termination is the only response that would be reasonably calculated to end the harassment.

Id. (citation omitted).

In this case, the only report of harassment that Flint made was to her supervisor, Lane, and to Washington's supervisor, Means, that Washington was harassing her by asking her out on dates. Flint Dep. at 79-81, Dkt. No. 38-3 at ¶¶ 16-18 (Lane's affidavit discussing complaint).[8] In terms of the employer response, it is undisputed that, after she reported that she did not want Washington to ask her out, both Means and Lane immediately approached Washington and told

---

[8] There is some dispute as to whether Flint reported only to Means, to both Means and Lane, or to Altice who went to Means. See, e.g., Dkt. No. 44 at 7. In any event, it is undisputed that both Means and Lane knew about her complaint and that both spoke to Washington and instructed him to stop asking her out.

8

him to stop. Dkt. No. 38-3 at ¶¶ 16-18; Dkt. No. 38-4 at ¶ 5. Additionally, although Flint contends that Means told her there was nothing he could do, she admits he temporarily moved Washington out of Flint's work area. Dkt. No. 44 at 7. The court concludes as a matter of law that these corrective actions were reasonably calculated to end the only harassing behavior she reported, even if they did not ultimately stop all harassment. Considering the factors set forth above, the court notes that the employer addressed the situation immediately, and that the response of two supervisors speaking to Washington and telling him not to ask Flint out anymore was proportional to the seriousness and frequency of the harassment as reported. This is perhaps particularly so because, although Flint did not want to be asked out on dates, she initially said that she did not find other flirtatious comments by Washington to be harassing. Flint Dep. at 69-70. Even afterward, she tried to be friendly toward him. So, it was apparent that even she was not expecting that he be terminated or that other more severe sanctions be taken at that time.

Critically, moreover, Flint acknowledged in her deposition that she never told any supervisor about any sexual comments, inappropriate remarks, or Washington's conduct in standing too close to her, wanting to work with her, or trying to touch her hand. She also never reported to anyone at Action or any supervisor at Elizabeth Arden that any sexually harassing conduct continued after her initial report that Washington had asked her out.[9] As the Fourth Circuit has endorsed, "the law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 269 (4th Cir. 2001) (quoting Parkins v. Civil Constructors, Inc., 163 F.3d 1027, 1038 (7th Cir. 1998) in context of Faragher/Ellerth affirmative defense). Put differently, "[i]f Title VII's prohibitions

---

[9] Her statement refers to one other time when she complained to Lane that Washington was being mean to her (this was on her final day of work), but Flint admitted in her deposition this report had nothing to do with sexual harassment. Flint Dep. at 77-78.

9

against sexual harassment are to be effective, employees must report improper behavior to company officials." Matvia, 259 F.3d at 269. Here, Flint failed to do that, aside from her initial report.

In her newly-filed statement, Flint does not contradict the undisputed facts set forth by Elizabeth Arden that the only time she complained to anyone about Washington sexually harassing her was the complaint about him asking her out. She contends she complained another time about Washington being mean to her, which is the incident in which she went to Lane and asked for his help in controlling the workers on the line, see supra note 7, and which ended with Lane announcing to all the workers on the line that "he wanted the fussing and complaining to stop." Dkt. No. 44 at 6. This complaint, however, did not raise any issue of sexual harassment. She further states that, later the same day, she tried to complain to Lane, but that Lane stopped her from talking at all, so she "knew it was time to be quiet and went on to lunch." Dkt. No. 44 at 6;[10] see also Flint Dep. at 106-07, 109 (testifying that on May 23, 2012 (the day her placement was terminated), she was crying because Washington had stated he would be working on her shift and she did not want to work with him, but that she never told this to Lane).

Flint also recounts another occasion, in which she had the opportunity to report Washington's conduct, but did not. Specifically, there was a day when Kathy (who worked for Action on-site at Elizabeth Arden), saw Flint visibly upset and asked if she was okay. When Flint responded, "No," Kathy then asked if Flint wanted to talk about it, but Flint replied "No, it will just make me cry and I have to go back to work now." Dkt. No. 44 at 3. Flint concludes from this

---

[10] Her statement says that she wanted to report to Lane that Washington was making inappropriate sexual comments to her and that she tried to speak by saying "I just want to tell you why DC is" and that Lane yelled out, "I don't care, I don't want to hear another word." Dkt. No. 44 at 6. This was on the same day that she had complained to Lane about work-related problems she was having with DC on the line, which was also her final day of work. See Dkt. No. 40 at 6-7 (court's opinion describing and summarizing Flint's reports about Washington and citing to authority therein).

10

that Action knew she "had some type of problem on the job." Id. She admitted in her deposition, though, that she never informed anyone at Action that Washington was making inappropriate comments or otherwise harassing her, and never made any complaints at all to Action. Flint Dep. at 83. Even if Flint's crying at work could have been assumed by Kathy to be caused by something happening at work, simply telling your employer you have a problem on the job is not the same as making a report of sexual harassment pursuant to the employer's policy.

Flint has offered some reasons as to why she failed to report any additional behavior. Specifically, instead of reporting to any supervisor or anyone at Action that offensive behavior was continuing or occurring, she explains that she either tried to be friendly or tolerated it. Dkt. No. 44 at 5 (Flint stating that she "tolerate[d] more [from Washington] than should have been allowed so that she would not look like the 'bad guy'" or "look confrontational"); id. at 4 (Flint confirming that, after she had reported Washington to Chris Means, she offered Washington her personal cell phone number as a "friendship" gesture, because she did not want to seem to be the problem, but the solution). In any event, regardless of whether her continued failure to report such behavior was reasonable,[11] it is clear that Elizabeth Arden did not have notice of any recurrences of the harassment or any new allegations of harassment after the supervisors gave oral instructions to Washington to stop asking Flint out on dates.

Inasmuch as Elizabeth Arden took reasonable steps to address the report of harassment made by Flint, and she did not inform it that the problem continued, the court concludes that she

---

[11] In the context of determining whether a plaintiff's failure to utilize a complaint procedure was reasonable, the Fourth Circuit has noted that a failure to report is not excused by either a generalized fear of retaliation or an allegation that the plaintiff did not think complaining would do any good. Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267-68 (4th Cir. 2001).

11

cannot establish the fourth element of her hostile work environment claim. Elizabeth Arden is thus entitled to summary judgment.

**Retaliation Claim**

As to the retaliation claim, nothing in Flint's signed response compels the court to change its prior conclusion. She insists that she did not have "altercations" with persons at Elizabeth Arden, and points to the dictionary definition of an altercation. Dkt. No. 44 at 7. But she admits that Lane made an announcement to all the workers on her line to stop arguing with Flint and to follow her directions and she admits that she had "problems of misconduct to deal with" either when she requested work be done, or when she would simply speak to a coworker. Dkt. No. 44 at 6-7; see also Dkt. No. 40 at 17-18 (court's prior opinion citing to various portions of Flint's deposition testimony in which she admitted to numerous difficulties in getting along with other employees). Moreover, for the reasons set forth in the court's prior opinion, she has not submitted any evidence from which a jury could conclude that the but-for cause of her termination was her earlier complaint of harassment.

For the foregoing reasons, Elizabeth Arden is entitled to summary judgment as to both of plaintiff's claims. To the extent plaintiff's filing requests reconsideration of that determination, her request is DENIED.

### Notice of Right to Appeal

Because this order denies a timely Rule 59(e) motion, any notice of appeal must be filed within 30 days of the entry of this order. See Fed. R. App. P. 4(a)(4) (time for appealing runs from the entry of the order disposing of a timely motion to alter or amend the judgment under Rule 59); Fed. R. App. P. 4(a)(1) (in a civil case, notice of appeal must be filed with the district clerk within 30 days after entry of the judgment or order appealed from). If Flint wants to appeal

to the United States Court of Appeals for the Fourth Circuit, she must strictly comply with this deadline.

The clerk shall send copies of this memorandum opinion and the accompanying order to all counsel of record and directly to Ms. Flint.

ENTER: This 13th day of February, 2015.

*/s/ Glen E. Conrad*
Chief United States District Judge